UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REID TALLEY,

    Petitioner,

v.                                                        Case No. 2:06-cv-288
                                                       HON. R. ALLAN EDGAR

J. WHITE,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Reid Talley filed this petition for writ of habeas corpus challenging the validity of his convictions for first degree home invasion and aggravated assault. Petitioner was convicted after a bench trial and was sentenced to 84 months to 20 years imprisonment for the home invasion conviction and one year on the assault conviction. Petitioner maintains that his convictions were obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his complaint:

I. Defendant's conviction of home invasion was against the great weight of evidence and/or based upon insufficient evidence and requested a new trial?

II. Defendant is entitled to a new trial based on the prosecution's suppression of evidence?

III. Defendant received ineffective assistance of counsel as was shown from the testimony at the Ginther hearing, and was entitled to a new trial on the home invasion charge?

IV. Defendant's sentence was not proportional to the severity of the offense of which he was convicted?

V. Did the trial court's finding exclude exculpatory evidence supporting defendant's claim of actual innocence in direct violation of state and federal law?

VI. Did the prosecution suppress favorable evidence which affected the outcome of the trial in violation of defendant's state and federal rights?

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state

court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the verdict was against the great weight of the evidence. A federal court may determine whether there was sufficient evidence to support the conviction, but the court cannot weigh the evidence. A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* The Michigan Court of Appeals concluded that there existed sufficient evidence to support the crime:

> Viewing the evidence in favor of the prosecution, there was sufficient evidence to support defendant's conviction of first-degree home invasion. Defendant never disputed the fact that he committed aggravated assault upon the complainant. The only question at trial was whether defendant entered the apartment by force. The complainant testified that she did not give defendant permission to enter the apartment and that he used his body to force the door open while the security chain was engaged. Complainant and her daughters each testified that complainant had never allowed defendant, or other men they were not related to, in the apartment when she was alone with her daughters. Richella and Remi, neither of whom were facing the door at the time defendant entered the apartment, testified that they heard a loud noise consistent with someone pushing through a locked door, and then subsequently saw defendant assaulting complainant. Complainant and her daughters also testified that prior to the incident with defendant, they had used the chain on the door, but that after the incident with defendant, the chain was broken and could no longer be used. Viewing the evidence in a light most favorable to the prosecution, the evidence is sufficient to support the trial court's conclusion that defendant entered the apartment by force and, accordingly, his conviction for first-degree home invasion.

It is clear that the evidence was sufficient to establish that petitioner committed the crime. The Michigan Court of Appeals' decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result

in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that his rights were violated when the prosecutor suppressed evidence and the court did not consider the suppressed evidence which could have established petitioner's innocence. Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989). The Michigan Court of Appeals rejected these claims:

> Defendant next claims that multiple instances of prosecutorial misconduct occurred, involving the prosecution's failure to produce evidence and witnesses, which denied him a fair trial. We disagree. This Court reviews claims of prosecutorial misconduct de novo to determine whether the defendant was denied a fair and impartial trial. *Abraham, supra* at 272. When a claim of prosecutorial misconduct is not properly preserved, our review is limited to where plain error affected defendant's substantial rights. *Id*. at 274-275. For a defendant to obtain reversal of a conviction under the plain error standard, (1) the defendant must show that a plain error affecting his substantial rights has occurred, and (2) the appellate court, in its discretion, must find that the plain error either resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity or public reputation of the judicial proceedings. *Abraham, supra* at 263; *People v. Rodriguez,* 251 Mich App 10, 24; 650 NW2d

96 (2002). This Court will not find error requiring reversal unless the prejudicial effect of the prosecutor's comments could not have been cured by a timely instruction. *People v. Callon,* 256 Mich App 312, 329; 662 NW2d 501 (2003); *People v. Watson,* 245 Mich App 572, 586; 629 NW2d 411 (2001).

A defendant's due process rights to discovery may be implicated when the prosecution suppresses material evidence favorable to the defendant after the defendant requested discovery. *People v. Tracey,* 221 Mich App 321, 324; 561 NW2d 133 (1997), citing *People v. Canter,* 197 Mich App 550, 568-569; 496 NW2d 336 (1992). The prosecution's suppression of evidence requested by and favorable to the accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *People v Banks,* 249 Mich App 247, 254-255; 642 NW2d 351 (2002), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). A *Brady* violation is established if the defendant demonstrates: "(1) that the state possessed evidence favorable to the defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *People v Lester,* 232 Mich App 262, 281-282; 591 NW2d 267 (1998) (citations omitted). "Undisclosed evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Defendant first argues that the prosecution suppressed the 911 tape and phone records, and should have taken measures to protect these records. However, defendant has not established that the prosecution improperly suppressed evidence. The record shows that prior to trial, defendant requested that the prosecution obtain the 911 tape and phone records. At trial, the prosecutor indicated that she had requested both records, but that they had been destroyed in the normal course of business. Defendant requested a court order compelling the prosecutor to obtain these records, and the trial court denied defendant's request. Defendant's claim fails because the prosecution was not aware of defendant's defense until after the records had been destroyed. The prosecution is under no duty to take measures to preserve these records on its own, and defendant can point to no authority which indicates otherwise. Further, defendant does not know what these records would have revealed, although he argues

that they would have indicated that Thomas had at least thirty minutes to fabricate the scene. Even assuming Thomas had an opportunity to fabricate the scene, no evidence supporting defendant's theory was presented at trial. Moreover, complainant's testimony that defendant forcefully entered the apartment and broke the chain on the door directly contradicts defendant's theory. Because the prosecution did not possess the requested information and there is no evidence that, if preserved and disclosed, these records would have resulted in a different outcome at trial, defendant's claim fails. *Lester, supra.*

Defendant also argues that the prosecutor should have produced Thomas as a witness at trial without defendant's assistance, investigated Thomas regarding defendant's allegations of misconduct, questioned him about his misconduct at trial, and produced a report that Thomas must have made regarding the incident. Because Thomas testified at trial, defendant suffered no prejudice, and his argument regarding the prosecutor's efforts in this regard has no merit. In addition, even if Thomas was being investigated, the prosecutor has no duty to disclose or question a witness who is under investigation regarding an unrelated matter. See *People v Brownridge (On Remand),* 237 Mich App 210, 215; 602 NW2d 584 (1999). Further, there is no evidence that Thomas filled out a report regarding the incident and, in fact, Thomas testified that he did not give a statement. Therefore, defendant was not denied a fair trial on this basis.

Defendant next argues that the prosecution should have produced witnesses Nobles, Harris, Bryant and Silar. Defendant asserts that Nobles, Harris and Bryant would have testified regarding complainant's numerous phone calls to NSO and inquiries regarding defendant's whereabouts. In our judgment, this evidence is not material and would not have made a difference at trial as the evidence is cumulative due to Parks' testimony on this same matter. Defendant alleges only that Silar would have provided positive character evidence. Defendant, however, failed to list Silar on this witness list and never requested that the prosecution produce Silar at trial. More importantly, Silar was not present during the offense and thus could not have testified regarding the pertinent issue of whether defendant entered the complainant's apartment by force. Because Silar's testimony is not likely to have rendered a different outcome at trial, we therefore conclude that no error affecting defendant's substantial rights occurred.

We also reject defendant's argument that the prosecution failed to produce Jones to testify. On the last day of trial, the prosecutor

> indicated that, although Jones received a subpoena to appear, she was unable to appear due to illness. The trial court offered to adjourn the trial, and even recommended that defendant do so, until Jones could be produced. After consulting with defense counsel and being questioned by the trial court at length regarding his decision, defendant indicated on the record that he had decided to waive Jones' appearance. Accordingly, because defendant waived any objection, we find there is no error to review. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000); *Hall, supra* at 679.

Similarly, the Michigan Court of Appeals rejected petitioner's claim that the trial court erred in making the findings of fact. In the opinion of the undersigned, petitioner has failed to show that his constitutional rights were violated by prosecutorial misconduct or that any evidence was improperly excluded. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that he received ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of

professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

The Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claims explaining:

> Defendant makes five separate claims of ineffective assistance of counsel. First, defendant alleges a breakdown in the attorney-client relationship occurred because his counsel failed to argue zealously on his behalf throughout trial and lacked interest in defendant's case. We disagree. At the *Ginther* hearing, trial counsel testified that he understood that defendant wanted to assert the defense that he did not forcefully enter the victim's apartment and that instead her uncle, off-duty Detroit police officer Roscoe Thomas, arrived at the victim's apartment before uniformed officers did in order to break the chain on the victim's door and thereby fabricate an appearance of a forceful entry. The record establishes that counsel's argument and questioning of the witnesses was consistent with the theory that defendant did not enter the apartment by force.
>
> In addition, trial counsel testified that on several occasions he made decisions and proceeded as requested by defendant even though he believed the requested actions would not be helpful to the defense,

citing as examples his request for a tape of the 911 call made by the victim as well as the victim's telephone records. Counsel also believed that the three former coworkers whom defendant wanted to testify could not offer relevant testimony as to whether defendant broke into the victim's apartment, and could offer only testimony regarding the victim's credibility, and to the extent the testimony was relevant, it was cumulative to testimony of another co-worker, Christopher Parks, who did testify. The trial record also shows that trial counsel held off the record discussions with defendant and made decisions at defendant's behest, both prior to and throughout trial. We, therefore, find no evidence to support defendant's contentions that his trial counsel failed to zealously represent him or that a lack of communication caused a breakdown in the attorney-client relationship. Defendant was not denied the effective assistance of counsel on this basis.

Second, defendant argues that counsel was not prepared for trial because counsel failed to meet with defendant, investigate defendant's claims in support of his defense, contact witnesses material to that defense, and take steps on his own to obtain telephone records. Defendant also argues that defense counsel's reliance on the prosecution to locate Thomas and obtain telephone records created a conflict of interest. We disagree.

When claiming ineffective assistance due to defense counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *Toma, supra* at 302; *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW 2d 80 (1990). Defense counsel has a constitutionally imposed duty to investigate the case, and the pre-trial stage is a critical period for investigation. *People v Dixon*, 263 Mich App 393, 397; 688 NW2d 308 (2004). The record shows that trial counsel met with defendant at least three times prior to trial, including one visit to interview defendant in jail shortly after he was appointed. At the initial meeting, defendant conveyed his theory of the case, discussed the witnesses and records he wanted presented at trial and admitted assaulting the victim but denied entering the apartment by force. Defendant gave trial counsel copies of lengthy correspondences he had written to the trial court and the prosecutor, among others, and also wrote many lengthy letters to trial counsel. According to the record, trial counsel read most of these communications. The record also establishes that trial counsel understood the details of what had occurred, that the only issue disputed was whether defendant entered the apartment by force, and how defendant wished to be defended. The record indicates that counsel had been apprised of all the relevant facts, firmly understood

defendant's defense theory, and was able to advocate defendant's position at trial. Consequently, we conclude that defendant was not prejudiced by any additional investigation or discussion that defendant wishes had occurred. See *Dixon, supra* at 397.

Defendant also claims that his trial counsel was unprepared because he relied on the prosecution to produce police officer Thomas as a witness and to obtain the 911 tape and the victim's phone records, and that this reliance created a conflict of interest. When claiming ineffective assistance due to defense counsel's conflict of interest, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *People v Smith*, 456 Mich 543, 556; 581 NW 2d 654 (1998). First, defendant cannot show that he was prejudiced by any of these alleged failures because Thomas actually testified at trial and the requested phone records were destroyed in the normal course of business prior to defendant's request. Second, defendant alleges that, in response to his inquiries regarding the telephone records, counsel proclaimed that they were destroyed and that he was "not going to do the work!" Defendant contends that this statement exemplifies his counsel's conflict of interest. Counsel, however, denied making the statement, and testified that he actually wrote a letter to the prosecutor regarding efforts to obtain these records, and that it was appropriate for him to rely on the prosecution when representing an indigent defendant. Even if counsel made the statement as defendant alleges, it does not at all reveal that counsel had an actual conflict of interest which prejudiced defendant.

Lastly, defendant argues that counsel was unprepared for trial because he failed to interview NSO employees Jacqueline Harris, Rosie Nobles and Gloria Bryant. Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *Rockey, supra* at 76. The failure to interview witnesses does not alone establish inadequate preparation. *Caballero, supra* at 642. Counsel testified that these witnesses would have commented on the complainant's credibility and the instances in which she called defendant's work. Counsel's investigations brought forth Parks as a witness, who testified to these very facts. Defendant, therefore, was not prejudiced by counsel's failure to interview these witnesses. Defendant also has not overcome the presumption that this decision was sound trial strategy. *Rockey, supra* at 76. In total, defendant alleges no conduct which would lead us to conclude that counsel was unprepared for trial and that defendant was prejudiced as a result. A new trial is not warranted on this basis.

Defendant's third argument is that counsel was ineffective because counsel failed to adequately examine Thomas about his alleged fabrication of the crime scene. We disagree. What questions to ask a witness are presumed to be matters of trial strategy. *Rockey, supra* at 76. Counsel questioned Thomas on the amount of time that he was in the apartment, and he testified that he arrived at the apartment approximately ten minutes before the uniformed officers' arrival. Although counsel did not directly ask Thomas whether he fabricated the crime scene, defendant has not shown why this could not have been a matter of trial strategy given Thomas' testimony that he was only in the apartment for ten minutes. In addition, we also note that defendant, who was very vocal throughout the trial, spoke in many instances directly to the court, despite being represented by counsel. Before Thomas left the witness stand, defendant himself indicated that he had no further questions for Thomas.

Fourth, defendant argues that counsel was ineffective because he did not argue that the testimony of complainant's eleven-year-old daughter, Richella, supported defendant's contention that there had been no forced entry by defendant. Defendant contends that Richella testified that there had been no forced entry into the apartment, that the trial transcript inaccurately reflects that Richella stated instead that she did not *see* defendant force his way into the victim's apartment, and that trial counsel failed to point out and argue that Richella's testimony supported defendant's actual innocence.

Defendant has provided no record support for his argument that the trial transcript, in which Richella admitted that she did not witness defendant enter the apartment, is in error. Further, defendant does not contest Richella's additional testimony, which is supported by the testimony of complainant's other daughter, twelve-year-old Remi, that she heard a loud noise consistent with a forceful entry before she saw defendant in the apartment and that the chain worked before the incident, but was broken after the incident.

Defense counsel questioned both Richella and Remi regarding what they actually witnessed, and successfully established that neither of them actually saw defendant enter the apartment. Counsel garnered testimony from the girls that they were present when the complainant told police what had happened. During closing argument, counsel argued that the only evidence to indicate that defendant forcefully entered the apartment was the complainant's unsubstantiated testimony, and evidence indicated that she was a very angry and vindictive person who did not want defendant to keep his job. Counsel contended that the prosecutor had not proven defendant's

guilt regarding any home invasion charge beyond a reasonable doubt. Consequently, we conclude that defendant was not denied effective assistance of counsel on this basis.

Finally, defendant argues that it was ineffective assistance for trial counsel to fail to produce police officer Timaka Jones, and civilian witnesses Nobles and Harris, who were material to defendant's defense. We disagree. Decisions regarding whether to call witnesses are presumed to be matters of trial strategy. *Rockey, supra* at 76. The failure to call witnesses can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *Dixon, supra* at 398. A substantial defense is one which might have made a difference in the outcome of the trial. *People v Hyland*, 212 Mich App 701, 710; 538 NW2d 465 (1995), vac'd in part on other grounds 453 Mich 900 (1996).

Because defendant's only theory was that the apartment was fabricated to appear as if he made a forceful entry, counsel correctly believed that the testimony of Nobles and Harris would not have contributed to proving defendant's innocence. Nobles and Harris would have testified to the complainant's inclination to call defendant's workplace, inquire about his whereabouts, and potentially her desire to get him fired. The testimony of Parks and the complainant herself established these facts. Similarly, Jones would have testified that she arrived at the complainant's apartment at 9:30 p.m., found Thomas present, as well as complainant and her daughters, and complainant refused to be taken to the hospital by EMS. Jones also could have reiterated what the complainant told her regarding defendant's forceful entry. Counsel again correctly believed that Jones and the other officers had nothing material to add to defendant's defense. We cannot say that the failure of these witnesses to testify denied defendant a substantial defense. See *Dixon, supra* at 398; *Hyland, supra* at 710. Defendant was not denied the effective assistance of counsel on this basis, or any other bases, as indicated above.

The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that his sentence was not proportional to the severity of the crime. Petitioner argues that his sentence violated the Eighth Amendment by being disproportionate to the crime. In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court stated that the law regarding proportionality was not clearly established for purposes of a habeas analysis under § 2254(d)(1) except that a gross proportionality principle is applicable to a sentence for a term of years. *Id.* at 71. However, "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* The Supreme Court stated:

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. In *Solem*[1] (the case upon which Andrade relies most heavily), we stated: "it is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not." And in *Harmelin*[2], both Justice KENNEDY and Justice SCALIA repeatedly emphasized this lack of clarity: that "*Solem* was scarcely the expression of clear . . . constitutional law," that in "adher[ing] to the narrow proportionality principle . . . our proportionality decisions have not been clear or consistent in all respects," that we "lack clear objective standards to distinguish between sentences for different terms of years," and that the "precise contours" of the proportionality principle "are unclear."
>
> Thus, in this case, the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme' case.

*Id.* at 72-73 (citations omitted). The Supreme Court further noted that state legislatures have "broad discretion to fashion sentences that fit within the scope of proportionality principle – the 'precise contours' of which 'are unclear.'" *Id.* at 76.

---

[1] *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001 (1983).

[2] *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680 (1991).

Moreover, the Sixth Circuit has concluded that a sentence that falls within the maximum penalty authorized by statute "generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). The Michigan Court of Appeals rejected this claim. Petitioner was sentenced within the maximum sentence and within the guideline range for his crime. Petitioner has not shown that the Michigan Court of Appeals' decision was unreasonable.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could

not find that a dismissal of each of petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: July 24, 2009